# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

vs.  Case No. 8:11-CR-561-T-27MAP

**ASIEBA IMADJAM THOMAS**

_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for New Trial (Dkt. 107) and the Government's response in opposition (Dkt. 109). Upon consideration, the motion is DENIED.

To the extent Defendant challenges the sufficiency of the evidence, the evidence need not be viewed in the light most favorable to the verdict. *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005). Rather, the court may weigh the evidence and consider the credibility of the witnesses. *Id.*

The audio and video recordings of Defendant's statements and actions, together with the testimony of the Government witnesses and other exhibits introduced, demonstrate that the evidence does not preponderate against the verdict. Tarrantzon Barr presented as a credible witness, notwithstanding that he was cooperating with the Government and hoped for a further reduction in his sentence. His testimony established that Defendant approached him initially while they were incarcerated, asking what it was worth to have Barr's problem (Patrick Shaw) go away, or words to that effect. The evidence established that Defendant renewed contact with Barr after being released on bond.

The resulting conversations between Barr and Defendant in which the murder for hire was discussed between them (the first of which was recorded by Barr before he became a cooperating

1

witness), were recorded and introduced into evidence. Those conversations persuasively demonstrated Defendant's intent to commit the offenses for which he was convicted, including his attempt to possess cocaine and his possession of the firearm. On one tape, for example, Defendant can be heard telling Barr he was going to "do this thing for you" because he needed the money. Defendant was heard (and seen) during one conversation telling Barr he would need a gun for the murder, and discussing the quantity of cocaine he would receive as compensation for the murder. Defendant agreed to meet with Barr at the University Square Mall on September 7th for the exchange of drugs and the firearm. His actions on that day were recorded on video and were not inconsistent with an intent to commit the crimes he was charged with, notwithstanding his assertion that "I ain't want that shit." Finally, on the video, Defendant did not refuse to take possession of the bag. Rather, he took the bag containing the cocaine and gun and placed it on the floorboard in front of him. Apparently sensing there was a problem, he uttered "I ain't want that shit" and told Barr "Let's peel." When Barr didn't move the vehicle, Defendant exited and was immediately arrested.

Upon review and weighing of the evidence and credibility of the witnesses, this Court concludes that the evidence does not preponderate against the verdict.

Defendant's complaint that the prosecutor "inappropriately commented on the Defendant's character through another witness before the Defendant decided to take the stand" does not support the requested new trial. The complained of testimony was elicited during cross examination of a defense witness, Eugene Harris. During direct, Harris acknowledged that he knew both Defendant and Barr. Through Harris, Defendant attacked Barr's character for truthfulness. During cross examination, the prosecutor asked Harris if he would believe Defendant, to which Harris, *without objection*, responded that he would believe Defendant and take what he said at face value.

Notwithstanding the lack of objection, but concerned that the next question, "[a]nd so would

2

it be fair . . ." could be problematic, the Court *sua sponte* interrupted cross examination and conducted a side bar conference with counsel, suggesting to the prosecutor that his cross examination was "dangerously close" to causing a mistrial because Defendant's character was not yet in issue. Only then did Defendant move for a mistrial, which was denied. The jury was instructed to disregard the questions and that Defendant's character was not an issue. Ultimately, Defendant testified and placed his credibility and character for truthfulness in issue. *United States v. Loffar*, 606 F.2d 587, 588 (11th Cir. 1979).

First, the lack of a contemporary objection precludes Defendant's complaint of error. Notwithstanding, if there was error, it harmless and certainly not plain error. Most importantly, as noted, the jury was instructed to disregard the testimony and cautioned that Defendant's character was not an issue.[1] Second, Harris answered the complained of questions favorably to Defendant. He said he would believe Defendant. While the Court was concerned with where the prosecutor was going with his cross examination, Harris' testimony was certainly favorable to Defendant. And Defendant did not object to the Court's curative instruction. Any arguable prejudice was "muted by the court's immediate curative instruction" and the "prosecutor did not mention the evidence again." *See United States v. Bain*, 736 F.2d 1480, 1489 (11th Cir. 1984), *cert. denied*, 469 U.S. 937 (1984).

Defendant's contention that these three stricken questions somehow compelled him to forego his Fifth Amendment rights and testify is disingenuous and is without evidentiary support. Moreover, Defendant presents nothing suggesting that the jury failed to follow the court's curative instruction. *See United States v. Walser*, 3 F.3d 380, 387 (11th Cir. 1993)(jury presumed to have followed instructions).

---

[1] Since he testified, Defendant's character ultimately did become an issue and the prosecutor could have asked the same questions of Harris. *United States v. Loffar, supra.*

3

Defendant's contention that the Government distorted his actual criminal history by asking him about each count of his prior convictions is likewise disingenuous. Defendant himself placed at issue his prior drug trafficking convictions during direct examination when he acknowledged his priors but contended that if they were all added up, the total would be less than an ounce. As the Government correctly points out, each count represents a crime for which Defendant could be impeached, and it was therefore proper to impeach Defendant with those priors. *U.S. v. Pedron,* 284 Fed.Appx. 598, 601 (11th Cir. 2008)( defendant who chooses to testify places his credibility in issue and can be impeached with evidence of prior convictions). Here, there was no distortion, merely an inquiry into each conviction. Regardless, since Defendant's prior convictions were not challenged, any perceived error did not have a substantial influence on the outcome of this case.

Finally, there was no real dispute that Barr and Defendant were drug dealers. Indeed, Defendant's testimony was essentially that he intended to dupe Barr so he could obtain the drugs and never see Barr again. Evidence of prior drug dealings is "highly probative of the intent to (possess with intent to ) distribute a controlled substance." *United States v. Sanders,* 668 F.3d 1298, 1314 (11th Cir. 2012). Further, the court gave a Rule 404(b) instruction, which cured any conceivable complaint of error.

Concerning Defendant's contention that Eugene Harris was "pressured not to testify," he provides no factual basis for this contention, and fails to explain what error, if any, occurred with respect to Harris' testimony. Harris was called as a defense witness, and his testimony supported Defendant's defense that Barr set up and entrapped Defendant. Whatever occurred after the trial and outside the presence of the jury is of no relevance to the instant motion.

Lastly, Defendant complains that the "Government inappropriately commented in closing argument" on whether cooperating witness Barr would receive an additional reduction in his

4

sentence on unrelated charges for testifying. Defendant did not object to this argument until after the jury was excused. Accordingly, the failure to make a contemporaneous objection waived any claimed error, absent plain error. *United States v. Rodriquez*, 627 F.3d 1372, 1379-80 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1840 (2011); *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).

Regardless, there was no error, much less plain error which effected Defendant's substantial rights. Barr admitted on cross examination that he hoped to have his sentence reduced as a result of testifying for the Government. His motive in testifying was therefore highlighted by Defendant's cross examination and was the appropriate subject of Defendant's final argument. The prosecutor's final argument in response to Defendant's argument included a reference that punishment was "for the judge alone to determine later," and that although Barr hoped for a sentence reduction, "[i]s not something the government controls. It is not some magic wand that's going to appear just because he testified today. Its not going to happen."

The prosecutor's remarks must be considered in the context in which they were made. They were in response to Defendant's comparison of Barr's and Defendant's motives in testifying. While the comment "[i]ts not going to happen" could be construed as a comment that Barr would not obtain the reduced sentence he hoped for, the fact remains that Barr admitted that he was testifying with the hope of obtaining a sentence reduction, so his motive in testifying was for the jury to consider in assessing his credibility, regardless of the prosecutor's statements. Indeed, while inartful, the isolated remarks came after the prosecutor acknowledged that Barr hoped for a reduction in his sentence as a result of testifying for the Government.

Even if the remarks were improper and objectionable, there was no contemporaneous objection which would have afforded the court with an opportunity to give a curative instruction. And any error could not have effected Defendant's substantial rights. Defendant was captured on

5

video and audio discussing the murder for hire scheme and captured on video taking possession of the cocaine and firearm. And with respect to Barr, the jury was instructed that such a witness may have a motive to testify falsely "in order to strike a good bargain with the government." Moreover, the jury was instructed that what the lawyers say is not evidence. The complained of remarks were relatively innocuous, and any error in making them was so minor that they could not possibly have affected the outcome of the trial.

**DONE AND ORDERED** this 26th day of July, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record